OPINION
{¶ 1} Appellants Eileen Bentley and Scott Peterson (hereinafter "mother" and "father", individually; "parents", collectively) appeal the December 15, 2005 Judgment Entry entered by the Licking County Court of Common Pleas, Juvenile Division, which approved and adopted the magistrate's decision recommending all of their parental rights be terminated and their minor children, Jasmine Bentley (DOB 8/21/01) and Cheyenne Bentley (DOB 10/30/03), be placed in the permanent custody of appellee Licking County Department of Job and Family Services ("the department").
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 13, 2004, the department filed complaints in the Licking County Court of Common Pleas, Juvenile Court Division, alleging Jasmine Bentley and Cheyenne Bentley were dependent and/or neglected children, and seeking temporary custody of the girls. Earlier complaints had been dismissed on procedural grounds. The trial court placed the children in the emergency temporary custody of the department. On December 15, 2004, the trial court adjudicated Jasmine and Cheyenne dependent children. The case proceeded to disposition on the same day, and the trial court ordered the temporary custody of the children continue with the department.
 {¶ 3} On July 26, 2005, the department filed a Motion for Permanent Custody. The matter came on for evidentiary hearing on November 29, 2005. The following evidence was adduced at the hearing.
 {¶ 4} Matt Tracy, an ongoing social worker with the department, testified the department received a referral in January, 2004, concerning Cheyenne's only gaining seven ounces during the first three months of her life, and Jasmine's having gained only a few pounds during her first three years of life. Tracy explained the department had a number of concerns about the family. Specifically, parents did not understand the girls' medical conditions and were unable to take care of their special needs. Additionally, at the time of the initial referral, parents were being evicted from their home as a result of a foreclosure. Neither mother nor father were employed at the time. Tracy noted the department developed a case plan for the family with the goal of reunification.
 {¶ 5} When asked about parents' compliance with the case plan objectives, Tracy explained, before parents moved to Iowa, they were enrolled in the department's parenting program, undergoing counseling, and attending some of the children's medical appointments if they had transportation and money. Tracy testified parents completed the first section of the parenting program, but did not complete the second section as they moved out of state on January 3, 2005. Mother had completed her counseling at Moundbuilders, but father quit counseling when parents moved. After parents moved out of the state, Tracy had only sporadic phone contact with them. Mother called to let Tracy know she was starting two jobs, but Tracy subsequently learned she lasted only two days at the jobs. Father also worked only two days during this time period.
 {¶ 6} Tracy explained parents were currently living in Texas and had signed a lease approximately two months prior to the hearing. Tracy noted for a period of approximately two to three weeks, parents were living in a Salvation Army in Oklahoma because their car had broken down. Between January, 2005, and the date of the hearing, parents had moved to Iowa, Texas, Missouri, returned to Iowa, and eventually settled in Texas. Throughout this time span, parents did not have independent housing.
 {¶ 7} Parents had supervised visitation with the children, every other week for two hours. Tracy stated parents attended the visits until they moved. After leaving Ohio, parents did not have any contact with the children. Parents had provided no financial support to the children while the girls had been in the care of the department.
 {¶ 8} Tracy described the special needs of the children to the trial court. With respect to Jasmine, Tracy noted she is most likely severely mentally retarded. Jasmine cannot walk or talk, but can only laugh and giggle. Jasmine cannot focus on any certain thing. The girl is unable to bond with anyone. She requires assistance in feeding. Although Jasmine had been seen by multiple doctors, a diagnosis had not been made. Cheyenne, on the other hand, had done very well since being placed in foster care. Cheyenne had gained weight, weighing almost thirty pounds at the time of the hearing. The girl laughs, talks, and sits up. She can focus on people and recognizes them. Cheyenne was still not able to walk at the time of the hearing. Tracy cautioned, although she is doing very well, she is still very delayed. At the time of the department's involvement, Cheyenne had been diagnosed with failure to thrive. Both girls receive physical therapy, three times week. Additionally, Jasmine attends an MRDD school where she receives speech therapy. The girls are currently together in foster care, and the foster parents are possibly interested in adopting them. In concluding his testimony, Tracy stated parents had not resolved the issues which led to the initial removal of the children.
 {¶ 9} Mother and father testified on their own behalf. Mother testified, since the department received temporary custody of the children, she had worked on her case plan. Specifically, mother stated she participated in the medical appointments and treatments of the children. Mother stated her belief that during the course of the department's involvement, she had developed an understanding of the girls' special needs.
 {¶ 10} On cross-examination, mother conceded she had not attended any of the children's therapy sessions, medical appointments, or supervised visits in the last eleven months. Mother acknowledged she had not sent any correspondence to the children, but explained it was because she was told it was not acceptable. Mother agreed she and father did not have stable housing between January, and October, 2005. Mother noted the longest job she had kept in the last two years was between one to two months. Mother's only consistent income during the last eleven months was child support which she received for her oldest child as well as cash assistance. The trial court asked mother how she paid for the gas to travel from Texas to Ohio for the hearing. Mother stated friends had given her money for gas and tolls, and she did have money to return to Texas. Mother explained father was unable to secure employment because of numerous disabilities he suffered. According to mother, father is half deaf, has learning disabilities and dyslexia, problem eyesight, and hand/eye coordination problems. Mother was certain, despite father's disabilities, father could take care of the children's special needs while she worked.
 {¶ 11} Father testified he was last employed in June, or July, 2003. Since that time, he had tried to secure employment, but had been unsuccessful due to his disabilities. Father described himself as half deaf in his right ear and almost completely deaf in his left ear. His other disability issues include vision problems, hand/eye coordination problems, and dyslexia. Father noted he had made regular employment applications over the last two years. On cross-examination, father was asked what changes he had made or what he had learned in order to help care for the children. Father noted he had not personally seen anything wrong with the way mother had been feeding the girls. Father acknowledged, as the primary care giver, it would be beneficial for him to know how to take care of the children, including attending therapy sessions and medical treatments. Despite this, father testified he had not attended therapy sessions or medical treatments with the girls during the last eleven months.
 {¶ 12} Via Decision of Magistrate filed December 15, 2005, the magistrate found neither father nor mother were capable of meeting the children's needs now or in the foreseeable future. The magistrate further found it was in Jasmine's and Cheyenne's best interest to place them in the permanent custody of the department. Via Judgment Entry filed December 15, 2005, the trial court approved and adopted the magistrate's decision, thereby terminating parents' parental rights and responsibility in regard to the girls and granting permanent custody to the department.
 {¶ 13} It is from that judgment entry, parents appeal, raising the following assignment of error:
 {¶ 14} "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE BENTLEY CHILDREN TO THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, BECAUSE ITS FINDING THAT THE PARENTS DID NOT WORK ON THE CASE PLAN AND THAT THE BENTELY [SIC] CHILDREN COULD NOT BE PLACED WITH THEIR MOTHER AND FATHER WITHIN A REASONABLE AMOUNT OF TIME WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 15} This appeal is expedited and is being considered pursuant to App. R. 11.2(C).
 I {¶ 16} In their sole assignment of error, parents maintain the trial court's finding parents did not work on their case plan and the children could not be placed with parents within a reasonable amount of time was against the manifest weight of the evidence.[1] We disagree.
 {¶ 17} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 18} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 19} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 20} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 21} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 22} Assuming the trial court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 23} The trial court determined Jasmine and Cheyenne could not and should not be placed with parents at this time or within a reasonable period of time. The trial court found parents did not work on their case plan, maintain contact with the department, or visit their children for over ten months. The trial court additionally found parents had not completed counseling or parenting skills classes. Parents point to the testimony of social worker Matt Tracy, who acknowledged, before they moved out of state, parents were enrolled in parenting classes and undergoing counseling, and noted parents had attended eighty-five percent of the children's medical appointments.
 {¶ 24} Although Tracy testified parents were working on the case plan prior to their departure from the state, we find parents' subsequent sporadic communications with Tracy about possibly having a job or finding housing does not establish parents had made any strides in understanding the children's medical conditions and the requirements for meeting the needs of the children. In January, 2005, parents moved from the State of Ohio and began a transient lifestyle, living in at least four different states. Parents did not visit or communicate with the children after leaving Ohio. We find the trial court's findings were supported by competent, credible evidence, and were not against the manifest weight of the evidence.
 {¶ 25} Parents argue the trial court was required to make a specific finding they did not work on their case plan prior to the court's having authority to grant permanent custody of the children to the department. We find no such statutory requirement under R.C. 2151.414 (E) (1). Assuming, arguendo, the trial court did in fact find parents had worked on their case plan, this did not preclude the trial court from determining parents had failed to remedy the conditions which caused the children to be removed from the home initially.
 {¶ 26} Parents' sole assignment of error is overruled. The judgment of the Licking County Court of Common Pleas is affirmed.
By Hoffman, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] Parents do not challenge the trial court's determination the best interest of the children would be served by granting permanent custody to the department.